

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 28 2011

CLERK, U.S. DISTRICT COURT
by _____
              Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LOLA ZUNIGA RICHARDSON, §
§
            Plaintiff, §
§
VS. § NO. 4:11-CV-180-A
§
DEUTSCHE BANK NATIONAL TRUST §
COMPANY, AS TRUSTEE FOR NEW §
CENTURY HOME EQUITY LOAN TRUST, §
SERIES 2005-B, ASSET BACKED §
PASS-THROUGH CERTIFICATES, and §
OCWEN LOAN SERVICING, LLC, §
§
            Defendants. §

## MEMORANDUM OPINION
### and
### ORDER

Now pending in the above-captioned action is the motion of
defendants, Deutsche Bank National Trust Company, as Trustee for
New Century Home Equity Loan Trust, Series 2005-B, Asset Backed
Pass-Through Certificates ("Deutsche"), and Ocwen Loan Servicing,
LLC ("Ocwen") (collectively, "defendants"), to dismiss the
complaint of plaintiff, Lola Zuniga Richardson, for failure to
state a claim upon which relief may be granted.  After having
considered such motion, plaintiff's responses, defendants' reply,
and applicable legal authorities, the court has concluded that
defendants' motion to dismiss should be granted.

I.

## Background

Plaintiff instituted this action by a pleading in the District Court of Tarrant County, Texas, 352nd Judicial District, on February 7, 2011, against defendants as Cause No. 352-251094-11.  Defendants removed the action to this court on March 21, 2011.[1]  Plaintiff filed an amended complaint ("Complaint") on September 8, 2011.

In the Complaint, plaintiff alleged claims against Ocwen for fraud (Count One), and against both Ocwen and Deutsche for violations of the Texas Finance Code (Count Two), unreasonable collection (Count Three), breach of contract (Count Four), promissory estoppel (Count Five), and wrongful foreclosure (Count Six).  Plaintiff sought judgment for economic, special, and exemplary damages, pre- and post-judgment interest, attorney's fees and costs, and a declaration that the foreclosure was "wrongful."  Compl. at 14.

In summary, plaintiff made the following allegations in the Complaint: On August 15, 2005, plaintiff executed a note for a

_____

[1] The court has subject matter jurisdiction over plaintiff's claims against defendants by reason of 28 U.S.C. §§ 1332(a) and 1441(a).  The parties are completely diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  See Compl. at 6-8.  Plaintiff is a citizen of Texas; Deutsche Bank is a citizen of California; and Ocwen, a limited liability company, is a citizen of Florida.

home equity loan in the principal amount of $180,000, which was
secured by a deed of trust to her home at 4503 West Chase Circle,
Grapevine, Texas.  Id. at 2.  The note was payable to Deutsche,
id., with Ocwen as the servicer, id. at 3.  Plaintiff then "got
behind" on her loan payments and filed for bankruptcy; her
Chapter 13 plan was confirmed on March 14, 2007.  Id. at 2.
Ocwen filed a motion for relief from the bankruptcy court's
automatic stay, which was lifted sometime after November 2008
when plaintiff "again got behind on her payments."  Id. at 2-3.
Between March 2009 and October 2009, in an effort to modify her
loan, plaintiff ultimately submitted four loan modification
applications, and she continued to communicate with several
different Ocwen employees (some identified only by first name)
about her application paperwork.  Id. at 3-6.[2]  On April 30,
2009, Ocwen filed an Application for Order Permitting Foreclosure
of Lien in the District Court of Tarrant County, Texas, 236th[3]

---

[2] According to the Complaint: Plaintiff contacted Ocwen "about a modification of the
loan to cure the delinquency" sometime after March 2009; she spoke to Mr. Depak Lakhani, Mr.
Nemesio, and other Ocwen employees, who "all assured her that the modification of the loan was
a viable option and that if she filled out an application and submitted the requested documents,
that [defendants] would not foreclose while a modification was pending."  Compl. at 3.  Plaintiff
then submitted to Ocwen her completed application, which was received on April 15, 2009.  Id.
Sometime in April 2009, plaintiff "called Ocwen and was told they had everything they needed
and the processing would take ten to thirty days."  Id.

[3] The Complaint incorrectly referred to the state court as the 239th Judicial District, when
it should instead be referred to as the 236th Judicial District.  Compl. at 3 & Ex. B, Notice of
Trustee's Sale.

Judicial District, in Cause No. 236-237384-09.  Id. at 3.

Although plaintiff complained "about this filing after being

served in early May 2009, . . . Ocwen employees assured her that

she had nothing to worry about and didn't need to respond."[4]  Id.

Plaintiff continued to correspond with Ocwen employees about the

status of her loan modification application after she witnessed

and confronted a woman taking pictures of her home on July 10,

2009.[5]  Id. at 4.  On September 22, 2009, plaintiff received two

letters: one letter "from the law firm of Baxter & Schwartz

_____

[4]Plaintiff alleged: As a result of Ocwen's assurances, she "refrained from hiring an attorney to respond to the application" for foreclosure. Compl. at 3. Plaintiff then called "Ocwen for an update and was told by Depak Lakhani that they could not find" her paperwork; "at his request, she faxed a second modification packet on May 20, 2009." Id. On June 2, 2009, she "was told by a Mr. Nemesio that Ocwen had the Modification packet, that it would be processed within 30 days and not to worry about foreclosure as the modification process was underway." Id. at 3-4.

[5]Plaintiff alleged: On July 10, 2009, plaintiff witnessed a woman, claiming to be part of the homeowner's association, taking pictures of plaintiff's home. Compl. at 4. Plaintiff thought this "made no sense," since she "didn't belong to a homeowner's association." Id. Afterwards, on an undisclosed date, she spoke to "Kiran at Ocwen's India office," who "advised that her property was scheduled for foreclosure on August 2, 2009." Id. When plaintiff "protested that she had been promised that wouldn't happen, Kiran told her not to worry as they had her loan modification package and she would give her file to a supervisor to make sure the foreclosure was stopped." Id. "Shortly thereafter," plaintiff then "received a letter from Ocwen . . . indicating their willingness to 'workout' a resolution on her loan." Id. On July 15, 2009, she spoke to "Jitesh Mani . . . [who] claimed he could not find her modification submission." Id. On July 16, 2009, she resent her application for the third time to Mr. Mani's fax number; he then left her a voice mail "acknowledging receipt of the tax" and indicating "that the process would take approximately 60 more days." Id. On August 15, 2009, she "received a letter, actually dated August 5, 2009, from Tina Fernandez of Ocwen acknowledging receipt of her third application and asking her to submit" additional documentation "by July 18, 2009." Id. "Alarmed by this obvious error," plaintiff unsuccessfully attempted to reach Fernandez over the last two weeks in August 2009. Id. at 4-5. On September 4, 2009, plaintiff submitted the requested additional documentation via fax. Id. at 5.

advising her that the property would be foreclosed on October 6,
2009," and another letter from Ocwen, dated September 17, 2009
("Ocwen September 2009 Letter"), in which Ocwen "reaffirm[ed]
that Ocwen would <u>not</u> move ahead with a foreclosure." <u>Id</u>. at 5.
The Ocwen September 2009 Letter was presented as an exhibit to
the Complaint, and included the following description of the
three-step loan modification application process:

> <u>Step 1</u> -- The first step in the approval process is to
> have your financial package reviewed for
> completeness. . . .
>
> <u>Step Two</u> -- Once the package has been certified as
> complete, your application moves to the underwriting
> stage where your eligibility is determined.  If you
> have applied for assistance on your primary residence
> and your loan is a first lien, Ocwen will first look to
> qualify you for the federal government's Home
> Affordable Modification Program ("HAMP").  If we
> determine that you do not qualify for the HAMP
> modification, we will attempt to qualify you for an
> Ocwen-sponsored modification program automatically
> . . . .  If you do not qualify for either a HAMP or
> Ocwen modification, we will send you a letter with
> information on alternatives.
>
> <u>Step Three</u> -- If you qualify, we will send you either a
> Trial Period Plan offer or a modification offer
> depending on the program.  You will then need to sign
> the plan or modification and return it [by the
> deadline.]

Compl., Ex. A.  The letter also stated, in relevant part: "[A]s
long as we have received all required documents and you have met
the eligibility requirements we will not initiate a new

foreclosure action and we will not move ahead with the foreclosure sale on an active foreclosure." <u>Id.</u>

Plaintiff further alleged that:  After receiving the letters, plaintiff "immediately" spoke to Nelson, an Ocwen employee, who "said not to worry and asked her to resubmit" documentation for her application.[6]  Compl. at 5.  Plaintiff did not hear from Ocwen again until October 19, 2009, when Jonathon Baker of Realty Professionals of Texas, Inc., "an authorized Ocwen representative," came to her home to ask "about her plans to move out"; he was surprised she did not know her home had been foreclosed.  <u>Id.</u> at 5-6.  Documentation of the foreclosure sale-- which included a notice of sale and a substitute trustee's deed-- was "later delivered to her along with a letter from Ocwen advising her of the foreclosure." <u>Id.</u>; Compl., Ex. B.  The notice of sale, filed in county records on September 14, 2009, showed that an order for a foreclosure sale had been entered on June 30, 2009, and that Ocwen was authorized to administer the foreclosure on behalf of Deutsche; the substitute trustee's deed confirmed that the foreclosure sale occurred on October 6, 2009. Compl., Ex. B.  On October 24, 2009, plaintiff "received a 3-day

---

[6] On September 23, 2009, plaintiff faxed Ocwen the additional documentation, and spoke to Dominique at Ocwen the next day to confirm receipt of the fax.  Compl. at 5.

written notice to vacate the property from attorney's [sic]
Mackie Wolf & Zientz, P.C."  Compl. at 6.

Plaintiff alleged that as a result of the foreclosure, she
suffered the following losses: "lost equity in her home of
$58,163.40," an "incalculable" sum of "revenue from a mineral
lease," $10,000 "of cherished belongings" she disposed when she
had to move to her sister's apartment, "$600 per month [in]
social security income" she lost when she was forced to retire
early from her second job, "loss of profits in excess of $33,000"
when she could no longer create and sell her art products, $1,200
for "a deposit on her new apartment," and "moving expenses of
over $1,000 in excess of what was reimbursed."  Id. at 5-8.

After plaintiff filed the Complaint, defendants answered and
filed a motion, and a supplemental motion, to dismiss the
Complaint.  Plaintiff filed responses to both the original and
supplemental motions.

II.

Analysis

A.    The Rule 8(a)(2) Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"

7

Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. See Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 129 S. Ct. at 1950. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

B.   Applying the Standards to the Complaint

The Complaint fails to meet the standard set forth in Rule 8(a)(2), as interpreted by the Supreme Court in Twombly and Iqbal.  The court agrees with defendants that plaintiff's allegations are nothing more than conclusory assertions that defendants harmed plaintiff and that the Complaint does not contain factual allegations to support the elements of any of her alleged claims and is, therefore, insufficient.

The court considers plaintiff's theories of recovery in the following order: first, the breach of contract claim; next, the promissory estoppel claim; next, the claim for violations of the Texas Finance Code; next, the unreasonable collection claim; next, the wrongful foreclosure claim; and finally, the fraud claim.[7]

---

[7] Defendants argue that in addition to the above-described claims, plaintiff implicitly alleged a cause of action for a violation of the Home Affordable Modification Program ("HAMP"); defendants also note that the majority of federal courts have refused to recognize a private cause of action under HAMP. Defs'. Mem. in Supp. of Mot. to Dismiss at 4, 7-8.  The court need not resolve this argument to dispose of plaintiff's claims.  Furthermore, plaintiff strongly denies that she has alleged such a cause of action, Pl.'s Mem. in Supp. of Resp. to Defs.' Mot. to Dismiss at 2, 8, and the court finds insufficient allegations in the Complaint to show that a HAMP violation has been asserted as a cause of action, see generally Compl.

1.  Breach of Contract Claim

The thrust of plaintiff's breach of contract claim is that the "actions of Defendants constitute a breach of the forbearance agreement between the parties."[8]  Compl. at 13.  In order to prevail on her breach of contract claim, plaintiff must establish (1) the existence of a valid contract between plaintiff and defendants, (2) the plaintiff's performance or tender of performance, (3) the defendants' breach of the contract, and (4) the plaintiff's damage as a result of the breach.  Smith Int'l, Inc. v. Egle Group, LLC, 490 F.3d 380, 387 (5th Cir. 2007); Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n, 205 S.W.3d 46, 55 (Tex. App.--Dallas 2006, pet. denied).  Plaintiff fails to satisfactorily plead all of these elements.

Although the Complaint is silent on what conduct or document gave rise to this alleged agreement, plaintiff argued, in her response to defendant's motion to dismiss, that the forbearance agreement was contained in the Ocwen September 2009 Letter.  She called this document a "Letter Agreement" that "evidences a

---

[8]Again, the Complaint does not identify the source of this agreement, but plaintiff clarifies in her responses to the motion to dismiss that she believes the Ocwen September 2009 Letter constitutes this forbearance agreement. See Pl.'s Mem. in Supp. of Resp. to Defs.' Mot. to Dismiss at 16 (referring to the Ocwen September 2009 Letter as a "valid and enforceable agreement ('Contract') that was performable within one year"); Pl.'s Mem. in Supp. of Resp. to Defs.' Supplemental Mot. to Dismiss at 2 (referring to the Ocwen September 2009 Letter as a "written letter agreement regarding the forbearance at issue, a copy of which was attached to Plaintiff's Complaint").

written agreement between the parties," concerning the
foreclosure forbearance.  Pl.'s Mem. in Supp. of Pl.'s Resp. to
Defs.' Supplemental Mot. to Dismiss at 14-15.  This allegation,
however, is not supported by the letter's language, which is
absolutely devoid of any phrase or statement indicating that it
is a forbearance agreement.  Compl., Ex. 1.  "Forbearance" is not
mentioned once in the letter; there is no language suggesting an
agreement has been formed; the heading states, "Important
Information Regarding Your Modification Application"; the
introduction explains that the letter "provide[s] answers to the
most frequently asked questions from customers who have similarly
applied for assistance," and then lists those answers.[9]  Compl.,
Ex. A.  In short, there is nothing in the letter to show that
either defendant agreed to the terms of a forbearance agreement.

To the extent that plaintiff claims an oral agreement was in
effect, plaintiff alleges no facts in support of such a claim,
and, furthermore, Texas law does not recognize the validity of
oral forbearance agreements in these circumstances.  In Texas,
any loan agreement exceeding $50,000 in value must be in writing.
Tex. Bus. & Comm. Code § 26.02(b).  A "loan agreement" includes
any promise, agreement, understanding, or commitment pursuant to

---

[9] While the letter references a "modification offer," it makes no mention of a modification
agreement or an agreement of any kind.  Compl., Ex. A.

which any financial institution delays repayment of money or to otherwise make a financial accommodation.[10]  Id. § 26.02(a)(2). Thus, an agreement to forbear payment on the note must be in writing.  Plaintiff's reliance on the Ocwen September 9 Letter as satisfying the "in writing" requirement is unavailing.  For reasons already stated, that letter did not constitute a promise, understanding, or commitment of the kind claimed by plaintiff. Even if the court were to entertain the notion that a forbearance agreement existed in some form, plaintiff has not alleged that she performed her obligations by making payments.

Plaintiff has not pleaded any plausible breach of contract theory.

## 2.  Promissory Estoppel

For her claim of promissory estoppel, plaintiff alleged claims concerning herself, along with another person identified as "Flores":

> Plaintiff alleges that Defendant Ocwen within its authority as the servicing agent for Deutsche Bank, promised Richardson that neither it or Deutsche Bank would foreclose on her homestead as long as her

---

[10] Paragraph 13 of the Note states in large boldface print that:
No oral agreements:
This note constitutes a "written loan agreement" pursuant to Section 26.02 of the Texas Business and Commerce Code, if such section applies. This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence . . . subsequent oral agreements of the parties.
Defs.' Supplemental Mot. to Dismiss, App. at 199, ¶ 13 (capitalization in original changed).

> modification application was under consideration, that
> Flores reasonably and substantially relied on this
> promise to her detriment, that Flores' reliance was
> foreseeable by Ocwen and Deutsche Bank, and that
> injustice can be avoided only by enforcing the
> defendants' promise.

Compl. at 13.

The elements of a claim for promissory estoppel are that:
(1) defendants made a promise to plaintiff; (2) plaintiff
reasonably and substantially relied on the promise to her
detriment; (3) plaintiff's reliance was foreseeable; and (4)
injustice can only be avoided by enforcing that promise. <u>Stanley
v. Citi-Fin. Mortg. Co.</u>, 121 S.W.3d 81, 820 (Tex. App.--Beaumont
2003, pet. denied). The Complaint is deficient in that
plaintiff's allegations in support of her promissory estoppel
claim concerns a person named Flores, Compl. at 13, but say
nothing about herself. Second, even assuming that the Flores
references were intended to be directed to plaintiff, there is no
plausible basis for her conclusory allegation that defendants
promised to plaintiff that they would not "foreclose on her
homestead as long as her modification application was under
consideration." <u>Id.</u>

Regardless of the claimed form of the promise, plaintiff's
claim fails. The language of the Ocwen September 2009 Letter
makes plain that there was no promise not to foreclose during the

consideration of modification application; the letter clearly states that Deutsche must "receive[] all required documents" and plaintiff must "[meet] the eligibility requirements" in order to delay an ongoing or new foreclosure action. Compl., Ex. 1. The Complaint fails to allege any facts that would support a conclusion that any reliance by her was reasonable or foreseeable, especially in light of the Ocwen September 2009 Letter.

The Complaint merely alleges "threadbare recitals of the elements" of promissory estoppel, and, therefore, does not allege facts entitling plaintiff to relief on that claim. Iqbal, 129 S. Ct. at 1949.

  3.   The Texas Finance Code Claim

The court now considers plaintiff's allegations concerning violations of the Texas Finance Code ("Code"), grouped together under the heading "Unfair Debt Collection Practices." Compl. at 10. Plaintiff alleged in the Complaint that defendants violated sections 392.301(a)(7), 392.304(a)(8), 392.304(a)(14), and 392.304(a)(19) of the Code. The Code defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code § 392.001(5). A "debt collector" is defined as an individual "who directly or

indirectly engages in debt collection," and includes an individual "who sells or offers to sell forms represented to be a collecting system, device, or scheme intended to be used to collect consumer debts." Id. § 32.001(6).

The court, proceeding on the assumption that defendants are "debt collectors" under section 392.001(6) of the Code,[11] finds that plaintiff has not pleaded sufficient facts in the Complaint to support a conclusion that defendants have acted in violation of the Code.

With respect to section 392.301(a)(7), plaintiff alleged:

> . . . In violation of Tex. Fin. Code
> § 392.301(a)(7), Defendant Ocwen represented verbally
> and in writing that it would not institute a new
> foreclosure or go through with a pending foreclosure
> while the Plaintiff's modification application was
> pending. Such representation was false. Relying on
> the representation, Plaintiff did not seek a state
> court injunction or file a chapter 13 bankruptcy to
> stay the foreclosure and thereby was injured by Ocwen's
> misrepresentation.

---

[11]Intermediate appellate courts in Texas have broadly interpreted the Texas Finance Code to permit foreclosure-related claims, without suggesting that foreclosures do not qualify as debt collection. Blanche v. First Nationwide Mortg. Corp. 74 S.W.3d 444, 453 (Tex. App.--Dallas 2002, no pet.). "When state law provides no definitive answers to the question presented, we must make an educated 'Erie guess' as to how the [state] Supreme Court would resolve the issue." Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP, 542 F.3d 475, 482–83 (5th Cir. 2008). "In making an Erie guess, we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." Herrmann Holdings Ltd. v. Lucent Techs., Inc., 302 F.3d 552, 558 (5th Cir. 2002) (internal quotation marks omitted).  The court therefore assumes that defendants constitute "debt collectors" under the Code.

> . . . Since Ocwen was the agent of Deutsche, and
> had the express authority to service the loan, such
> misrepresentations were also the misrepresentations of
> Deutsche.

Compl. at 10.

Plaintiff appears to allege that defendants misled her with misrepresentations about the status of a pending or new foreclosure, but these allegations are wholly unrelated to the conduct barred under section 392.301(a)(7), which prohibits debt collectors from "us[ing] threats, coercion, or attempts to coerce that . . . threaten [that] nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings." Tex. Fin. Code § 392.301(a)(7). In fact, plaintiff clearly stated in her Complaint that defendants filed an application to foreclose on her property in state court in Cause No. 236-237384-09, and that she was served in early May 2009. Compl. at 5. Those allegations show that defendants initiated the foreclosure process by engaging in court proceedings, filing the necessary documents, and serving her with those court documents. There is no allegation, however, to show that defendants threatened plaintiff that her failure to make payments would result in the foreclosure of her property without proper court proceedings.

Accordingly, plaintiff has failed to state any facts that would entitle her to relief under section 392.301(a)(7).

With respect to section 392.304(a)(8), plaintiff alleged:

> . . . In violation of Tex. Fin. Code § 392.304(a)(8), the Defendants misrepresented the character, extent, amount of a consumer debt; or misrepresented the consumer debt's status in a judicial or governmental proceeding;

> . . . Specifically, Ocwen when it foreclosed on plaintiff's homestead misrepresented the status of the plaintiff's debt <u>by representing that it had the right to foreclose but concealing and disregarding the fact that a valid forbearance agreement was in effect</u>.

> . . . Since Ocwen was the agent of Deutsche, and had the express authority to service the loan, such misrepresentations were also the misrepresentations of Deutsche.

Compl. at 10-11 (emphasis added).

Section 392.304(a)(8) prohibits debt collectors from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt." <u>Id.</u> § 392.304(a)(8). Plaintiff's claim regarding defendants' "concealing and disregarding" of "a valid forbearance agreement" is not supported by any factual allegations. As the court has discussed previously in the breach of contract claim, the Complaint alleged no facts to show the existence of a valid forbearance agreement. Although plaintiff has alleged a written contract exists, the Ocwen September 2009 Letter she provided

17

shows otherwise.  And, to the extent that plaintiff alleges a breach of an oral agreement, such a claim is foreclosed by Texas law and contradicted by the plain language of the note.  Tex. Bus. & Comm. Code § 26.02(b); Defs.' Supplemental Mot. to Dismiss, App., Texas Home Equity Fixed/Adjustable Rate Note, at 199, ¶ 13.  Irrespective of whether the alleged agreement was oral or written in nature, plaintiff has not stated a claim alleging a violation of section 392.304(a)(8).

As to sections 392.304(a)(14) and 392.304(a)(19), plaintiff alleged:

> . . . In violation of Tex. Fin. Code § 392.304(a)(14), the Defendants misrepresented the status or the nature of the services rendered by the debt collector;

> . . . Specifically, since Ocwen represented to the Plaintiff that Deutsche would entertain a modification of the Note if plaintiff filed an application and would not foreclosure [sic] while the modification was pending.  The plaintiff relied on this misrepresentation and complied with the terms set out by Ocwen on behalf of Detusche.  It is obvious from Ocwen's conduct, as alleged in paragraphs 7 - 27, that Ocwen and Deutsche had no intention of entering into a modification, but merely sought to induce the plaintiff into a false sense of security, so she wouldn't take any action to thwart their intentions to foreclose on the property.

> . . . By Deutsche's silence and inaction it ratified Ocwen's conduct and is also in violation of these provision of the Texas Finance Code.

> . . . In violation of Tex. Fin Code
> § 392.304(a)(19), the Defendants used false
> representations or deceptive means to collect a debt.

Compl. at 11.

Debt collectors are prohibited from "representing falsely the status or nature of the services rendered by the debt collector." Id. § 392.304(a)(14). Plaintiff appears to allege that defendants misinformed her that they "would not foreclose[] while the modification was pending." Compl. at 11. The record shows that plaintiff's allegations simply are implausible. Defendants clearly communicated to plaintiff in a written statement--the Ocwen September 2009 Letter--that she must satisfy two requirements to delay the foreclosure or prevent a new foreclosure action if she is selected to participate in HAMP: One, Deutsche must "receive[] all required documents," and two, plaintiff must "[meet] the eligibility requirements." Compl., Ex. 1. Although an Ocwen employee named "Nelson" later told plaintiff "not to worry," and to "resubmit" additional documentation for her application, Compl. at 5, there is no allegation that this Ocwen employee ever said anything inconsistent with the requirements stated in the letter.

Even if the court were to assume that the prior oral statements made by defendants were misrepresentations, the Ocwen September 2009 letter makes patently clear that plaintiff could

19

not have justifiably relied upon those earlier statements to her

detriment.   Thus, plaintiff has failed to state a claim for

relief by alleging a violation of section 392.304(a)(14).

As to section 392.304(a)(19), which prohibits debt

collectors from "using any other false representation or

deceptive means to collect a debt or obtain information

concerning a consumer," id. § 392.304(a)(19), plaintiff merely

recited the statutory elements without alleging facts to show

that defendants acted in violation of the Code.

In sum, plaintiff has failed to plead a claim against

defendants for a violation of the Code that entitles her to

relief.

4.   <u>Unreasonable Collection Claim</u>

In her unreasonable collection claim, plaintiff alleged that

defendants' collection efforts "were done maliciously, wantonly,

recklessly, intentionally, knowingly or willfully. . . ."   Compl.

at 12.   According to plaintiff, Ocwen

> represented to her it was taking her application to
> modify his [sic] loan in good faith, yet its conduct in
> making her repeatedly send the same information, being
> evasive, refusing to return phone calls, constant deals
> in the modification process, hostility, anger, false
> assurances that everything was "okay," and then finally
> foreclosing on her property without explanation or
> remorse clearly constitutes a pattern of harassment
> that was willful, wanton, malicious, and intended to
> inflict mental anguish and bodily harm. . . .

. . . Ocwen was Deutsche Bank's agent and Ocwen
was performing in the scope of its duties as a
servicer, Deutsche Bank is therefore jointly and
severally liable for the acts of Owen.

Id.

Unreasonable collection is an intentional tort that requires plaintiff to prove that defendants' actions amount "to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." EMC Mortg. Corp. v. Jones, 252 S.W.3d 857, 868 (Tex. App.--Dallas 2008, no pet.). The Texas Supreme Court has found it "necessary that the lender carry on a campaign of harassment in order to entitle the borrowers to actual damages, much less exemplary damages." Ware v. Paxton, 359 S.W.2d 897, 899 (Tex. 1962). It is apparent to the court that the Complaint lacks any allegations to support an unreasonable collection claim. There is no allegation that Ocwen harassed plaintiff in such a manner, that Ocwen acted intentionally to cause plaintiff mental anguish and bodily harm, or that Deutsche can be held liable for any misconduct.

In all, the allegations in the Complaint do not state a claim for unreasonable collection upon which relief can be granted.

5. <u>Wrongful Foreclosure</u>

The court now turns to the wrongful foreclosure claim.  To state a claim for wrongful foreclosure, plaintiff must show: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  <u>Sauceda v. GMAC Mortg. Corp.</u>, 268 S.W.3d 135, 139 (Tex. App.--Corpus Christi 2008, no pet.).  While plaintiff alleged that "[t]he defect was the conflicting notices received . . ., one giving notice of the foreclosure and another advising plaintiff that there would be no foreclosure," Compl. at 13, she provided no elaboration for her claim.  In a "wrongful foreclosure" claim, it is not enough to merely show a defect in the foreclosure process; the plaintiff must also show that an inadequate sales price resulted from the defect alleged.  <u>See</u> <u>Am. Sav. & Loan Ass'n of Houston v. Musick</u>, 531 S.W.2d 581, 587 (Tex. 1975).  While plaintiff claims that "the home was sold substantially below market value," Compl. at 13, she does not allege facts that would support a conclusion that the alleged defect caused the sales price to be inadequate.

Thus, plaintiff has failed to plead factual allegations that would enable the court to reasonably infer that either defendant is liable for a wrongful foreclosure claim.

6.   <u>Fraud</u>

The court last turns to the fraud claim.  Plaintiff's fraud claim, alleged only against Ocwen, is governed by the pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. See <u>Lone Star Fund V (U.S.), LP v. Barclays Bank PLC</u>, 594 F.3d 383, 387 n.3 (5th Cir. 2010) ("[T]his court has applied the heightened pleading requirements [of Rule 9(b)] when the parties have not urged a separate focus on the negligent misrepresentation claims such as when fraud and negligent misrepresentation claims are based on the same set of alleged facts.") (internal quotation marks omitted).  Rule 9(b) of the Federal Rules of Civil Procedure requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  <u>Herrmann Holdings Ltd. v. Lucent Techs. Inc.</u>, 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks and citations omitted).  To satisfy this requirement, a plaintiff must allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." <u>Tuchman v. DCS Commc'ns Corp.</u>, 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks omitted).

Plaintiff's allegations of fraud fail to satisfy Rule 9(b)'s heightened pleading requirements.  In the Complaint, plaintiff alleged that

> Ocwen represented to [her] that if she applied for a modification of her home loan in accordance with their instructions and made certain payments on the loan that they wouldn't foreclosing [sic] pending a decision on the application. . . . She relied on these representations believing she didn't need to seek an injunction to stop the foreclosure, put the property up for sale or seek refinancing with another lender.

Compl. at 9.

Although plaintiff provided substantial information about some aspects of her communications with defendants, the court cannot pinpoint a single instance where she alleged all of the requisite elements for fraud: the content of the false representation, the identity of the speaker, the benefit obtained by that speaker, and the date the representation was made.  In fact, the majority of the allegations concerning plaintiff's communications with Ocwen are not accompanied by any specific date.  Incomplete identifications of the speaker and vague references to the date as sometime "after being served in early May 2009" are simply not sufficient to give defendants fair notice of when the allegations took place.  Compl at. 4-5.

Moreover, plaintiff does not satisfactorily explain what was supposedly fraudulent about each alleged statement or what would

support a conclusion that she justifiably relied on any of the statements she mentions in the Complaint.  <u>Lewis v. Bank of Am. N.A.</u>, 343 F.3d 540, 546 (5th Cir. 2003) (requiring claimant to show that reliance on the alleged misrepresentation was justifiable).  The communication that plaintiff had with the Ocwen employee named Nelson, for instance, merely shows that she was told "not to worry," Compl. at 5.  That alone fails to allege with the required specificity the elements of fraud as to the statement.

The allegations in the Complaint fail to satisfy the Rule 9(b) heightened pleading requirements for fraud.

### III.

### Conclusion and Order

The court therefore concludes that plaintiff has not alleged any facts that would allow the court to draw the reasonable inference that plaintiff is entitled to declaratory relief, or that defendants are liable to plaintiffs under any of the theories of liability alleged in the Complaint.  As a result, plaintiff's Complaint fails to state a plausible claim to relief and should be dismissed.

For the reasons given above,

The court ORDERS that defendants' motion to dismiss be, and is hereby, granted.

The court further ORDERS that all claims asserted by plaintiff against defendants be, and are hereby, dismissed with prejudice.

SIGNED November 28, 2011.

_____
JOHN McBRYDE
United States District Judge